■ Incorporated Village of Great Neck Plaza, Respondent-Appellant, v Nassau County Rent Guidelines Board et al., Appellants-Respondents, et al., Defendant, and Walter David et al., Intervenors-Appellants-Respondents.—In an action, *inter alia,* to declare that Rent Guideline No. 1 for the Villages of Great Neck Plaza and Thomaston is invalid (1) the defendants (except defendant New York State Division of Housing and Community Renewal) and the intervenors appeal from a judgment of the Supreme Court, Nassau County, dated November 27, 1976, which, after a hearing, declared that guideline invalid and (2) plaintiff cross-appeals from so much of the judgment as failed to invalidate the guideline upon an additional ground. Judgment modified, on the law, by adding thereto a provision remanding the matter to the Nassau County Rent Guidelines Board (the board) for redetermination of the appropriate guidelines. As so modified, judgment affirmed, without costs or disbursements. Subdivision b

of section 4 of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) states that "A county rent guidelines board * * * shall consider among other things (1) the economic condition of the residential real estate industry in the affected area including such factors as", and is followed by specified items, including "costs and availability of financing, (including effective rates of interest)," and "over-all supply of housing accommodations and over-all vacancy rates". Special Term, after a hearing, properly determined that "Guidelines No. 1 Villages of Great Neck Plaza and Thomaston", adopted on December 30, 1974 by the board, was invalid because of the board's failure to consider both financing costs and vacancy rates. Under the circumstances, Special Term should have remanded the matter to the board for consideration of those items, and based thereon, for reconsideration of the appropriate rental increases. In a declaratory action, where the court concludes that an administrative or quasi-legislative determination was based on failure to consider mandated matters, the court should do more than merely declare its invalidity; it should also direct a remand so that such matters can be duly considered and in order to minimize further plenary suits (see *Silverstein v Continental Cas. Co.,* 23 AD2d 801, affd 17 NY2d 845). Plaintiff argues that the board was further remiss because it did not consider landlords' profits, rate of return on investments and cash flow. Plaintiff admits that these items are not specifically set forth in the statute, but argues that they are necessarily elements to be considered in determining "the economic condition of the residential real estate industry". The uncontested testimony at the hearing, primarily that of one who had been one of the tenant-members of the board, was to the effect that only a small minority of the landlords had furnished requested data as to the gross rentals and that, as a result, data as to *net* income was sparse, and further, that such information was not considered by the board at all. It would be improper, in the face of the failure of the Legislature to list net income, cash flow and rate of return as mandated items for evaluation of the "economic condition of the residential real estate industry", to require such matters to be factors in the ultimate determination of any guideline increases. Nevertheless, it is evident that a fair evaluation of "economic condition" ordinarily requires that some consideration be given to the net income existent just prior to the effective date of the guidelines. Normally, pursuant to the presumption of regularity, we would assume that such consideration was given. Here, however, the uncontested testimony is that no consideration at all was given to this item, and the board has proffered no explanation as to why it would have been irrelevant. Therefore, based on the record in this case, on the hearing on the remand, the board shall consider, in addition to the items heretofore set forth as elements of "economic condition" (i.e., financing costs and vacancy rates), such data as is reasonably available to it of the net income earned by landlords of covered apartment buildings on or about December 30, 1974. However, the ultimate weight and significance to be given to the data is within the discretion of the board. Hopkins, J. P., Rabin, Shapiro and O'Connor, JJ., concur.